LATHAM & WATKINS LLP
  Perry J. Viscounty (Bar No. 132143)
    *perry.viscounty@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
714.540.1235 / 714.755.8290 (Fax)

LATHAM & WATKINS LLP
  Jennifer L. Barry (Bar No. 228066)
    *jennifer.barry@lw.com*
  Patrick C. Justman (Bar No. 281324)
    *patrick.justman@lw.com*
12670 High Bluff Drive
San Diego, CA  92130
858.523.5400 / 858.523.5450 (Fax)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| ENTREPRENEUR MEDIA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE ENTREPRENEURS WORKSHOP, INC., a Florida corporation; CONSULTING ALLIANCE 2.0, INC., a Florida corporation; and DOES 1-10,<br><br>Defendants. | CASE NO. 8:17-cv-01084<br><br>**Complaint For:**<br><br>**(1)  Trademark Infringement (Lanham Act, 15 U.S.C. § 1114)**<br><br>**(2)  Unfair Competition/False Designation of Origin (Lanham Act, 15 U.S.C. § 1125(a))**<br><br>**(3)  Common Law Trademark Infringement**<br><br>**(4)  Common Law Unfair Competition**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## COMPLAINT

## NATURE OF ACTION

1.     Plaintiff Entrepreneur Media, Inc. ("EMI") brings this complaint against Defendants for (i) federal trademark infringement and false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; and (ii) common law trademark infringement and unfair competition under California law, and alleges, with knowledge concerning its own acts and on information and belief as to all other matters (unless otherwise specifically stated), as follows:

## THE PARTIES

2.     EMI is a California corporation with its principal place of business at 18061 Fitch Avenue, Irvine, California 92614.

3.     Defendant The Entrepreneurs Workshop, Inc. is an organization residing at 2627 S. Bayshore Drive #2204, Miami, Florida 33181, that conducts business in California and within this District, and throughout the United States under the ENTREPRENEUR RADIO mark.

4.     Defendant Consulting Alliance 2.0, Inc. is an organization residing at 11111 Biscayne Blvd., 1-1904, Miami, Florida 33181, that conducts business in California and within this District, and throughout the United States under the ENTREPRENEUR RADIO mark.

5.     Does 1-10 are persons or entities responsible in whole or in part for the wrongdoing alleged herein ("Doe Defendants").  Each of the Doe Defendants participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts.  EMI will amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

6.     Defendants The Entrepreneurs Workshop and Consulting Alliance are referred to, collectively, as "Defendants."

7. The Defendants are the alter ego of each other because there is a unity of interest and ownership between them, such that the separate personalities of the entities no longer exist and any failure to disregard the corporate form would result in a fraud or injustice.

8. Each Defendant acted as the principal, agent, or representative of each of the other Defendants. Any action by one of the Defendants was within the course and scope of the agency relationship between the Defendants and was with the permission, ratification, and/or authorization of each of the other Defendants.

9. As fully detailed below, Defendants use the ENTREPRENEUR RADIO mark (alternatively referred to as the "Infringing Entrepreneur Mark") in such a manner that violates EMI's longstanding and strong rights in the ENTREPRENEUR® mark.

## JURISDICTION AND VENUE

10. Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over EMI's claims for relief for violation of the Lanham Act. Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over EMI's state law trademark infringement claim because it is joined with substantial and related claims under the Lanham Act. This Court also has supplemental jurisdiction over EMI's state law claim pursuant to 28 U.S.C. § 1367(a) because all of EMI's claims arise out of a common nucleus of operative facts.

11. This Court has personal jurisdiction over Defendants, and each of them, because (i) Defendants have (a) conducted substantial business in the State of California; (b) derived financial benefits from residents of the State of California, including by marketing services to residents of the State of California and otherwise placing infringing products and services into the stream of commerce, with the knowledge or understanding that such services are sold in the State of California, including within this District; (c) purposefully availed

1    themselves of the privilege of conducting business within the State of California;

2    and (d) sought protection and benefits from the laws of the State of California; and

3    (ii) the causes of action arise directly from the Defendants' business contacts and

4    other activities in the State of California.

5         12.    Venue in this Court exists under (i) 28 U.S.C. §§ 1391(b)(1), (c)(2) as

6    Defendants reside in this District as they are subject to the Court's personal

7    jurisdiction; and (ii) 28 U.S.C. § 1391(b)(2) as a substantial part of the events

8    giving rise to EMI's claims occurred within this District.

9                 **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

10                **EMI and Its Successful ENTREPRENEUR® Brand**

11        13.    For nearly forty years, EMI (together with its predecessor companies)

12   has published magazines and books, which provide editorial content and other

13   information, as well as offered products and services related, or of interest, to

14   businesses, business owners, and prospective business owners.

15        14.    EMI's longstanding marketing and sales efforts have been conducted

16   primarily under the mark ENTREPRENEUR® (the "ENTREPRENEUR Mark").

17        15.    EMI is the publisher of ENTREPRENEUR® magazine and other

18   publications incorporating the ENTREPRENEUR name in their titles.

19   ENTREPRENEUR® magazine is published monthly with a current print and digital

20   paid circulation, including both subscriptions and single-copy sales, of more than

21   590,000 in the United States and worldwide.  ENTREPRENEUR® magazine is

22   sold and distributed in over one-hundred foreign countries.

23        16.    ENTREPRENEUR® magazine routinely features articles about and

24   interviews with some of the biggest names in the business community, including

25   Richard Branson, skateboarding icon Tony Hawk, NFL quarterback Drew Brees,

26   and hip hop mogul Russell Simmons:

27   ///

28   ///



17.   ENTREPRENEUR® magazine also annually publishes, and has continuously published for over thirty years, the highly anticipated Franchise 500® ranking of America's top franchises using EMI's top-secret formula:



18.   EMI also publishes and distributes within the United States and worldwide over 200 book titles under the ENTREPRENEUR Mark and ENTREPRENEUR PRESS® in print:

19.   EMI has also launched many of its most successful titles as e-books:

1
2
3
4
5
6
7
8



9
10
11
12
13
14
15

20.     EMI also conducts seminars, workshops, and other educational programs geared towards teaching others to successfully start and operate businesses.  These events have included: (i) the *Entrepreneur® Masters & Mentors* seminar series sponsored by Cathay Pacific and Nissan, (ii) *Entrepreneur® Magazine's GrowthCon* conference sponsored by Canon USA, and (iii) the *Entrepreneur 360™*, a conference sponsored by The Lincoln Motor Company, Canon USA, AXA Financial, and American Airlines.

16
17
18

21.     EMI operates a number of websites to further disseminate and market its content and services, including *Entrepreneur.com*, *Entrepreneurnetwork.com*, and various social media channels and mobile apps.

19
20
21

22.     The website at *Entrepreneur.com* has recently averaged more than eighteen million unique users and more than forty-six million page views per month.

22

23.     EMI has also launched apps for iPhones/ iPads and Android:

23
24
25
26



27
28

24.     EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news

and business.  These co-branding relationships have most recently included: (i) contests sponsored by General Motors and Canon USA; (ii) content provided and branded by CNBC, Reuters, NFL Players Association, and Business Insider; (iii) Princeton Review (ranking top entrepreneurial schools); (iv) Great Place to Work® (annual Best Small & Medium Workplaces rankings); (v) Palo Alto Software (Entrepreneur Magazine's Business Plan Pro® software); and (vi) an online forms and documents service with SeamlessDocs.

25.     Most recently and in particular, EMI has: (i) partnered with Steve Case's **_Rise of the Rest_**™, a nationwide program to promote entrepreneurship in start-up ecosystems within middle America; (ii) hosted a contest with Canon USA under the rubric **_Project Grow Challenge_**, in which businesses were awarded money based on how they proposed to grow their businesses through increased productivity and consumer awareness; and (iii) partnered with Chivas Brothers Limited as its exclusive media content partner, in connection with and support of Chivas' annual event known as **_The Venture_**, a worldwide competition to discover, celebrate, and award with investment dollars extraordinary startup businesses creating positive social change.

26.     Through careful cultivation of its various products and services, EMI has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.

27.     EMI has received a tremendous amount of public recognition and acclaim for the products sold and services provided under its ENTREPRENEUR Mark.  Through EMI's widespread and continuous use of the ENTREPRENEUR Mark, it has acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EMI.

28.     The fame and quality of the products and services bearing the ENTREPRENEUR Mark have been widely recognized through industry awards

1  and commendations.  For example, ENTREPRENEUR® magazine was a finalist in

2  two categories in Folio's 2010 Eddie & Ozzie magazine awards, has been named

3  one of the top performing magazines for four years in "Capell's Circulation

4  Report," and has been honored for its content by receipt of the prestigious Maggie

5  award in 2008, 2009, 2010, and 2011 from the Western Publishing Association.

6  EMI's website at *Entrepreneur.com* has been awarded "Outstanding Achievement

7  in Web Development" by the Web Marketing Association, and its networking

8  website under the ENTREPRENEUR CONNECT Mark was voted the #1 "Top 10

9  Social Networks for Entrepreneurs" by Mashable.com.  EMI has also received

10  multiple Integrated Marketing Awards from MIN for its magazine and website,

11  including being selected as an awards finalist in 2015.

12       29.   In addition, both ENTREPRENEUR® magazine and the

13  *Entrepreneur.com* website have been named to BtoB magazine's 2010, 2011, and

14  2012 lists of the top 50 media outlets for business-to-business advertising.  EMI's

15  management and staff have also been recognized for their contributions to

16  publishing and the media industry, including such awards and recognitions in 2015

17  as (i) Folio's designation of an EMI staff writer as one of the "Top Women in

18  Media," and (ii) Fast Company's recognition on Twitter of EMI's Editor-in-Chief

19  as one of the "25 Smartest Women in Media."

20                 **EMI's Intellectual Property Rights**

21       30.   EMI owns, and has obtained United States federal registrations for,

22  the ENTREPRENEUR Mark, as well as a family of related marks incorporating

23  the term ENTREPRENEUR, as follows:

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16:  Paper goods and printed matter; namely magazines, books, and published reports pertaining to business opportunities | 1,453,968 August 25, 1987 |

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO.<br>REG. DATE |
|---|---|---|
| ENTREPRENEUR | 35:  Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers; and web advertising services, namely, providing active links to the websites of others | 2,263,883<br>July 27, 1999 |
| ENTREPRENEUR | 35:  Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely, the start-up and operation of small business enterprises<br>41:  Educational services, namely, conducting seminars on the development and operation of businesses, and conducting workshops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning, and insurance | 2,502,032<br>October 30, 2001 |
| ENTREPRENEUR | 38:  Streaming of video and digital material on the Internet | 4,260,948<br>December 18, 2012 |
| ENTREPRENEUR | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, and distribution of digitized content | 4,345,424<br>June 4, 2013 |
| ENTREPRENEUR BOOKSTORE | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to starting and operating a business and other topics concerning and of interest to entrepreneurs, new and existing businesses, and members of the general public | 4,612,937<br>September 30, 2014 |
| ENTREPRENEUR PRESS | 16:  Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running, and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public<br>35:  Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running, and operating a business and individuals who succeeded in | 3,470,064<br>July 22, 2008 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

COMPLAINT
DEMAND FOR JURY TRIAL

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public | |
| Ep Entrepreneur Press | 16: Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running, and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,063 July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 9: Downloadable computer software and software for mobile devices for the reproduction, display, distribution, and sharing of digitized content; downloadable electronic publications, namely, magazines in the fields of business, finance, sales, marketing, current events, lifestyle issues, and developments in science and technology | 4,532,577 May 20, 2014 |
| ENTREPRENEUR'S STARTUPS | 16: Paper goods and printed matter; namely, magazines, books, booklets, and published reports pertaining to business opportunities | 3,204,899 February 6, 2007 |
| ENTREPRENEUR 360 | 16: Annual featured issue of magazine featuring the achievements of successful non-franchise and privately-owned businesses and publications related thereto, providing information and incentive to others to pursue excellence in business pursuits by presenting awards on an annual basis, and promoting award recipients and providing recognition by the way of awards to demonstrate excellence in the field of business. 35: Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information to customers in the field of starting and operating non-franchise and privately- | 5,052,999 October 4, 2016 |

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | owned businesses by means of a global computer network and other computer online service providers; advertising services, namely, providing advertising space in a magazine featuring news and information concerning the field of non-franchise and privately-owned businesses; providing statistics, ratings, and rankings and other information capable of being updated on a continuing basis through an interactive database and about businesses which are not franchises and are privately-owned.<br>41:  Recognizing the achievements of successful non-franchise and privately-owned businesses and providing incentive to others to pursue excellence in business pursuits by presenting a wards on an annual basis and promoting award recipients; providing recognition by the way of awards to demonstrate excellence in the field of business; arranging and conducting educational  conferences; educational services, namely, developing,  arranging, and conducting educational conferences and programs and providing courses of instruction in the field of business administration and management | |

31.    The above marks are collectively referred to as the "EMI Marks." The above registrations are collectively referred to as the "EMI Registrations."

32.    EMI's three U.S. registrations for the ENTREPRENEUR Mark (Nos. 1,453,968; 2,263,883; 2,502,032) and several other of the foregoing registrations are also incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as EMI's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

33.    Further, the EMI Registrations constitute prima facie evidence that the marks are valid, and that EMI is entitled to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

34.     EMI, and its predecessors in interest, have been and are now engaged in the business of developing, creating, distributing, marketing, advertising, and selling a wide variety of goods and services under the EMI Marks, and in particular under the ENTREPRENEUR Mark.  In fact, EMI has used the ENTREPRENEUR Mark in commerce for over thirty years, having first adopted that mark for magazines at least as early as May 2, 1978, and it is famous, well-known, and recognized as identifying goods and services that originate from EMI.

35.     Through careful cultivation of its goods and services provided under the EMI Marks, and in particular the ENTREPRENEUR Mark, EMI has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.  Through EMI's widespread and continuous use of its family of EMI Marks, these marks have acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from EMI.

36.     Numerous courts have recognized the strength of the EMI Marks, including:

    i.    The U.S. District Court for the Central District of California held that "[t]he extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR® Mark] as a strong mark in the industry"; the ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of significant protection"; and the ENTREPRENEUR Mark "has acquired secondary meaning." *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, *9–10, 13 (C.D. Cal. June 23, 2004).

    ii.    The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal.  *Entrepreneur Media, Inc. v. Smith*, 101 Fed. App'x 212, 215 (9th Cir. 2004).

iii.  Both a Magistrate Judge and District Court Judge in the Eastern District of Virginia found the ENTREPRENEUR Mark to be distinctive. *Entrepreneur Media, Inc. v. seattleentrepreneur.com*, No. 11-00409, Docket No. 22 (E.D. Va. Dec. 6, 2011).

iv.  The U.S. District Court for the District of Maryland has twice recognized the EMI Marks as valid, strong, and distinctive. *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC, et al.*, No. RDB-12-1970, Docket No. 30 (D. Md. July 23, 2013); *id.*, Docket No. 47 (Apr. 7, 2014).

v.  The U.S. District Court for the District of Connecticut has recognized that "the EMI Marks, and in particular the ENTREPRENEUR Mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection." *Entrepreneur Media, Inc. v. Whitehill et al.*, No. 13-cv-01819(MPS), Docket No. 19 (D. Conn. Aug. 19, 2015).

### **Defendants' Unauthorized Use of EMI's Marks**

37.  Defendants offer training, programming, and related goods and services targeted at small and medium-sized business owners under the ENTREPRENEUR RADIO mark.

38.  Defendants use the ENTREPRENEUR RADIO mark on their *entrepreneurradio.org* domain name and website with a wide variety of goods and services, including but not limited to promotional and educational podcasts and materials, as shown here:



1
2
3
4
5
6
7
8
9
10
11
12



13

*(entrepreneurradio.org)*

14   39.   For their podcasts (available on iTunes and Stitcher), Defendants

15   conduct interviews of California residents, promote California business, and solicit

16   listeners from California.

17
18
19
20
21
22
23
24
25



26   (https://itunes.apple.com/eg/podcast/entrepreneur-radio-recent/id805019927;

27   *see also* http://www.stitcher.com/podcast/entrepreneur-radio?refid=stpr*)*

28

1    40.    Defendants also promote and use the ENTREPRENEUR RADIO

2    mark on social media websites, including but not limited to Facebook, Google, and

3    Twitter (collectively, the "Social Media Accounts"), as depicted below:



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

COMPLAINT

DEMAND FOR JURY TRIAL

1  (*www.facebook.com/Entrepreneurradio; https://twitter.com/entreprenair;*

2  *https://plus.google.com/u/0/+EntrepreneurradioOrg*)

3      41.    Defendants offer, market, and promote their goods and services

4  through a variety of channels, including their (i) *entrepreneurradio.org* domain

5  name and website; (ii) Social Media Accounts; (iii) media distributors, such as

6  iTunes and Stitcher; and (iv) local events held throughout the world, including

7  California.  Indeed, Defendants' website highlights their nationwide activities,

8  including within California, as demonstrated by the below list of events found on

9  their website:

1   (*http://www.entrepreneurradio.org/calendar-events/*)

2       42.    In light of EMI's renown, online presence, and long history of

3   providing articles, profiles, newsletters, and information for small and mid-sized

4   businesses, as well as hosting seminars and other educational events, EMI is very

5   concerned that consumers will likely be confused and mistakenly believe that

6   Defendants and their goods and services are endorsed, approved, or sponsored by,

7   or affiliated, connected, or associated with EMI.

8       43.    Defendants will thus reap the benefits of EMI's reputation and

9   goodwill based on this consumer confusion, to EMI's detriment.

10       44.    EMI has attempted to reconcile its concerns with Defendants several

11   times, but Defendants have refused to cease use Infringing Entrepreneur Mark.

12             **EMI Is Harmed By Defendants' Continuing**

13             **Infringement & Unlawful Conduct**

14       45.    Defendants' continued use of the confusingly similar Infringing

15   Entrepreneur Mark in commerce violates EMI's valuable intellectual property

16   rights in the EMI Marks and EMI Registrations, and Defendants' knowing,

17   intentional, willful, and malicious use of this mark is damaging EMI and EMI's

18   property.

19       46.    Defendants adopted and used the Infringing Entrepreneur Mark to

20   unfairly usurp and capitalize on the value and goodwill of the EMI Marks and EMI

21   Registrations, particularly the ENTREPRENEUR Mark.  Indeed, Defendants were

22   aware of EMI's strong trademark rights and reputation in the marketplace, but,

23   nevertheless, adopted the Infringing Entrepreneur Mark to profit from the goodwill

24   associated with the EMI Marks and EMI Registrations.

25       47.    Due to Defendants' continuing willful infringement and unlawful

26   conduct, EMI is now forced to bring this Complaint to protect its valuable and

27   longstanding intellectual property rights.  EMI had to retain counsel and incur

28

1  substantial fees and costs (and it continues to incur those fees and costs) to

2  prosecute this suit and pursue its claims.

3       48.    EMI's interest in protecting its intellectual property rights and its

4  products and services from consumer confusion outweigh any harm to Defendants.

5  The public interest is best served by granting EMI's requested relief against

6  Defendants.

7  **FIRST CLAIM FOR RELIEF**

8  **Federal Trademark Infringement – 15 U.S.C. § 1114**

9       49.    EMI incorporates by reference the factual allegations set forth above.

10       50.    EMI owns the EMI Marks and the EMI Registrations.  The

11  trademarks reflected in the EMI Registrations are strong and distinctive and

12  designate EMI as the source of all products and services advertised, marketed,

13  sold, or used in connection with the EMI Marks.  In particular, the

14  ENTREPRENEUR Mark has been used for over thirty years and has been

15  recognized by federal courts as a strong and distinctive mark.

16       51.    EMI is the senior user of the EMI Marks as it began use of those

17  marks in interstate commerce prior to Defendants' first use of the confusingly

18  similar Infringing Entrepreneur Mark.

19       52.    Defendants do not have authorization, license, or permission from

20  EMI to market and sell their products and services under the Infringing

21  Entrepreneur Mark, which is confusingly similar to the EMI Marks, including the

22  ENTREPRENEUR Mark, and is used with products and services that are identical

23  and/or closely related to the particular products and services associated with the

24  EMI Marks, particularly the ENTREPRENEUR Mark.

25       53.    Defendants were aware of the EMI Marks, particularly the

26  ENTREPRENEUR Mark, as Defendants were on constructive notice based on

27  EMI's longstanding federal registrations, as well as on actual notice based on

28  EMI's numerous communications to Defendants about this issue.  Thus,

Defendants' unauthorized use of the confusingly similar Infringing Entrepreneur Mark was and is knowing, intentional, and willful.

54.     As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

55.     Defendants' actions therefore constitute trademark infringement.

56.     Unless an injunction is issued enjoining any continuing or future use of the confusingly similar Infringing Entrepreneur Mark by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably damage EMI.

57.     Defendants' activities have caused and will continue to cause irreparable harm to EMI, for which it has no adequate remedy at law, because: (i) the EMI Marks, and in particular and the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EMI's goodwill and customer relationships and is harming and will continue to substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

58.     Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendants to account to EMI for any and all profits derived from their infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EMI that were caused by Defendants' conduct.

59.     Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against Defendants.

60.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus EMI is entitled to an award of attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF

### Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

61.     EMI incorporates by reference the factual allegations set forth above.

62.     The EMI Marks, and in particular the ENTREPRENEUR Mark, are strong and distinctive and designate EMI as the source of all goods and services advertised, marketed, sold, or used in connection with those marks.  In addition, by virtue of EMI's decades of use of the ENTREPRENEUR Mark in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under that mark and the EMI Marks, the EMI Marks, including in particular the ENTREPRENEUR Mark, have acquired secondary meaning, whereby the consuming public of this District, the State of California, and the United States associate the EMI Marks with a single source of products and services.

63.     EMI is the senior user of the EMI Marks as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar Infringing Entrepreneur Mark.

64.     Defendants were aware of the EMI Marks, and in particular the ENTREPRENEUR Mark, as Defendants were on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on EMI's communications to Defendants about this issue.  Thus, Defendants' unauthorized use of the confusingly similar Infringing Entrepreneur Mark was and is knowing, intentional, and willful.

65.     Through their use of the confusingly similar Infringing Entrepreneur Mark, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that EMI somehow

authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar Infringing Entrepreneur Mark.

66.    In fact, there is no connection, association, or licensing relationship between EMI and Defendants, nor has EMI ever authorized, licensed, or given permission to Defendants to use the confusingly similar Infringing Entrepreneur Mark in any manner.

67.    Defendants' use of the confusingly similar Infringing Entrepreneur Mark will likely cause confusion as to the origin and authenticity of Defendants' website, events, and related goods and services and will likely cause others to believe that there is a relationship between Defendants and EMI when there is, in fact, not.

68.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

69.    Defendants' actions thus constitute false designation of origin and unfair competition.

70.    Defendants' activities have caused, and will continue to cause, irreparable harm to EMI, for which it has no adequate remedy at law, in that: (i) the EMI Marks, including the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EMI's goodwill and customer relationships and will substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

71.    Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendants to account to EMI for any and all profits derived from their actions, to be increased in accordance with the applicable provisions of law;

1   and (ii) awarding all damages sustained by EMI that were caused by Defendants'

2   conduct.

3        72.    Defendants' conduct was and is intentional and without foundation in

4   law, and pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of

5   treble damages against Defendants.

6        73.    Defendants' acts make this an exceptional case under 15 U.S.C.

7   § 1117(a); thus EMI is entitled to an award of attorneys' fees and costs.

8                        **THIRD CLAIM FOR RELIEF**

9                   **Common Law Trademark Infringement**

10       74.    EMI incorporates by reference the factual allegations set forth above.

11       75.    EMI has valid and protectable common law rights in the EMI Marks.

12       76.    EMI is the senior user of the EMI Marks.

13       77.    Defendants' conduct constitutes infringement of EMI's common law

14   rights in the EMI Marks.

15       78.    Defendants' use of the EMI Marks and Infringing Entrepreneur Mark

16   on unauthorized goods and services is likely to cause confusion as to the origin of

17   Defendants' goods and services and is likely to cause others to believe that there is

18   a relationship between Defendants and EMI.

19       79.    Defendants' wrongful acts have permitted and will permit them to

20   receive substantial profits based upon the strength of EMI's reputation and the

21   substantial goodwill it has built up in the EMI Marks.

22       80.    As a direct and proximate result of Defendants' wrongful conduct,

23   EMI has been and will continue to be damaged.

24       81.    Unless an injunction is issued enjoining any continuing or future use

25   of the EMI Marks by Defendants, such continuing or future use is likely to

26   continue to cause confusion and thereby irreparably damage EMI.  EMI has no

27   adequate remedy at law.  Accordingly, EMI is entitled to an injunction.

28

## FOURTH CLAIM FOR RELIEF

### Common Law Unfair Competition

82. EMI incorporates by reference the factual allegations set forth above.

83. EMI has expended significant time and expense in developing the EMI Marks and the high-quality products and services it markets and sells under those marks. The EMI Marks have been very successful and have developed a substantial reputation and goodwill in the marketplace.

84. Through their wrongful conduct, Defendants have misappropriated EMI's efforts and are exploiting the EMI Marks and EMI's reputation to market and sell their services under the Infringing Entrepreneur Mark. These actions constitute unfair competition.

85. As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

86. Unless an injunction is issued enjoining Defendants' unfairly competitive conduct, EMI will continue to be damaged irreparably. EMI has no adequate remedy at law. Accordingly, EMI is entitled to an injunction.

87. Defendants have acted willfully, intentionally and maliciously, such that EMI is entitled to punitive damages.

## PRAYER

WHEREFORE, EMI prays for the following relief:

A. An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of the injunction order by personal or other service, to:

      i.      cease all use and never use the ENTREPRENEUR RADIO mark, the EMI Marks, or any other mark likely to cause confusion with the EMI Marks, in connection with the

1    promotion, advertising, offering for sale, or sale, of any

2    products or services;

3    ii.    never use any false designation of origin, false representation,

4    or any false or misleading description of fact, that can, or is

5    likely to, lead the consuming public or individual members

6    thereof, to believe that any products or services produced,

7    offered, promoted, marketed, advertised, provided, or sold by

8    Defendants are in any manner associated or connected with

9    EMI, or are licensed, approved, or authorized in any way by

10   EMI;

11   iii.   never represent, suggest in any fashion to any third party, or

12   perform any act that may give rise to the belief, that

13   Defendants, or any of their goods or services, are related to,

14   authorized, or sponsored by EMI;

15   iv.    cease all use of the *entrepreneurradio.org* domain name and

16   any similar domain names, and never register any domain

17   names that contain any of the EMI Marks, or any domain

18   names confusingly similar to any of the EMI Marks;

19   v.     cease all use of the iTunes, Stitcher, and Social Media Accounts

20   (collectively, "Defendants Accounts") and any similar accounts

21   or social media websites, and never register any such account

22   that contains any of the EMI Marks, or any such account

23   confusingly similar to any of the EMI Marks;

24   vi.    never unfairly compete with EMI in any manner whatsoever, or

25   engage in any unfair, fraudulent, or deceptive business practices

26   that relate in any way to the production, distribution, marketing,

27   and/or sale of products and services bearing any of the EMI

28   Marks; and

vii.       never apply for or seek to register any mark that is likely to cause confusion with any of the EMI Marks.

B.       An order pursuant to 15 U.S.C. § 1116(a), directing Defendants to file with the Court and serve upon EMI's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

C.       An order transferring to EMI all domain names, including but not limited to *entrepreneurradio.org*, in Defendants' possession, custody, or control that include the word "entrepreneur" or any misspelling thereof, or are otherwise confusingly similar to or contain any of the EMI Marks.  To give practical effect to this order, a further order requiring the Registrar for any of the foregoing domain names to, within fourteen (14) days of receipt of the order, transfer those subject domain names to EMI if Defendants have not already done so.

D.       An order transferring to EMI all of Defendants' Accounts, including all such accounts in Defendants' possession, custody, or control that include the word "entrepreneur" or any misspelling thereof, or are otherwise confusingly similar to or contain any of the EMI Marks.  To give practical effect to this order, a further order requiring the appropriate service for any of the foregoing accounts to, within fourteen (14) days of receipt of the order, transfer those subject accounts to EMI if Defendants have not already done so.

E.       An order finding that, by the acts complained of above, Defendants have infringed EMI's federally registered trademarks in violation of 15 U.S.C. § 1114.

F.       An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

G.       An order finding that, by the acts complained of above, Defendants have engaged in common law trademark infringement.

1   H.      An order finding that, by the acts complained of above, Defendants

2   have engaged in common law unfair competition.

3   I.      An order awarding EMI damages as follows:

4          i.      Pursuant to 15 U.S.C. § 1117(a), EMI's actual damages, as well

5              as all of Defendants' profits or gains of any kind from their acts

6              of trademark infringement, false designation of origin, and

7              unfair competition, including a trebling of those damages; and

8          ii.     Punitive damages pursuant to California common law.

9   J.      An order pursuant to 15 U.S.C. § 1117(a) finding that this is an

10  exceptional case and awarding EMI its reasonable attorneys' fees.

11  K.      An order pursuant to 15 U.S.C. § 1117(a) awarding EMI all of its

12  costs, disbursements, and other expenses incurred due to Defendants' unlawful

13  conduct.

14  L.      An order awarding EMI pre-judgment interest.

15  M.      An order awarding EMI such other relief as the Court deems

16  appropriate.

17  ## JURY DEMAND

18  Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

19  demands a trial by jury.

20

21  Dated:  June 22, 2017                Respectfully submitted,

22                                       LATHAM & WATKINS LLP

23

24  By */s/ Perry J. Viscounty*
        Perry J. Viscounty

25      *Attorneys for Plaintiff*
        ENTREPRENEUR MEDIA, INC.

26

27

28